Kim G. DECKARD, Appellant–
Respondent,

v.

Kathy L. DECKARD, Appellee–
Petitioner.

No. 55A01–0504–CV–163.

Court of Appeals of Indiana.

Jan. 24, 2006.

Michael A. Ksenak, Martinsville, for Appellant.

## OPINION

CRONE, Judge.

### Case Summary

Kim G. Deckard ("Husband") appeals the trial court's divorce decree. We affirm in part, reverse in part, and remand.

### Issues

Husband raises six issues, which we consolidate, reorder, and restate as follows:

I. Whether the trial court abused its discretion in valuing Husband's checking account;

II. Whether the trial court abused its discretion in distributing certain personal property;

III. Whether the trial court abused its discretion in including Husband's withdrawal from the parties' line of credit in the marital estate;

IV. Whether the trial court abused its discretion in failing to require a minimum grade point average as a condition of Husband's contribution toward his daughter's college education; and

V. Whether the trial court erred in ordering Husband jailed for contempt of a child visitation order.

### Facts and Procedural History

Husband and Kathy Deckard ("Wife") were married on April 2, 1984. They had three children, Samantha, Cody, and Danielle. On December 5, 2003, Wife moved out of the marital residence with Samantha and Danielle, while Cody remained with Husband. On December 6, 2003, Husband wrote a check to himself from his and Wife's line of credit with Bank One. Appellant's App. at 92; Ex. 17. On December 8, 2003, Wife filed a petition for marriage dissolution. On December 9, 2003, Husband deposited the aforementioned check drawn from the Bank One line of credit into the parties' joint checking account at First National Bank and Trust. Husband continued to draw from the parties' line of credit until January 22, 2004. Appellant's App. at 93–99. On January 15, 2004, Husband withdrew $5,000.00 from the line of credit and purchased a car for $4,750.00. *Id.* at 98, 101. On January 16, 2004, Husband filed a motion for a temporary restraining order requesting, *inter alia,* that the parties be restrained from incurring any additional joint indebtedness. *Id.* at 11. On January 22, 2004, the trial court granted the motion.

On January 25, 2004, the trial court issued its preliminary order. The trial court awarded Wife custody of Danielle and Samantha and awarded Husband custody of Cody. *Id.* at 37. Both parents were to have visitation according to the Indiana Parenting Time Guidelines,[1] except that Husband was not to have overnight visitation on weekends. *Id.* Wife was ordered to pay the line of credit debt. *Id.* at 38. Both parties were ordered not to "transfer, encumber, conceal or dispose of any other marital assets except in the usual course of business or for the necessities of life," and the trial court stated that it would take the disposition of any property into account at the final hearing. *Id.* at 39.

On February 23, 2004, Wife filed a motion to reconsider and modify portions of preliminary order, for findings of contempt and fraud, and for finding of attorney fees.[2] On April 8, 2004, a hearing was held on Wife's motion, and on April 16, 2004, the trial court entered an order thereon, which included the following findings:

1. Given the additional withdrawals that Husband has made on the line of credit, [Wife] shall continue to pay $100.00 per month and Husband shall be responsible for the difference between the minimum payment on the line of credit and the $100.00 that Wife is ordered to pay, retroactive to the date of the preliminary order.

. . . .

7. Beginning immediately, the parties are advised that Cody has no choice but to visit with his Mother consistent with the visitation order set forth in the Court's preliminary order.

8. The Court will speak with Cody after school on April 8, 2004 to advise him of the required visitation.

9. Cody will be advised, and Husband is advised, that Husband may be held in contempt and spend time in jail should Cody fail to visit with his Mother as Ordered.

*Id.* at 42–43.

Hearings on the dissolution petition were held on September 20, October 6, and November 29, 2004. The parties submitted an agreed stipulation and partial final settlement, in which they agreed to file for Chapter 7 bankruptcy, leaving no pre-separation debt for the trial court to distribute between the parties. *Id.* at 84; Ex. 1. In addition, the parties agreed to a 60–40 division of the marital estate in Wife's favor. Tr. at 8.

On January 3, 2005, the trial court issued the final divorce decree, which included the following findings:

16) The martial [sic] estate . . . shall be foreclosed upon as part of the parties' separate bankruptcy discharges.

17) That as such, the marital residence shall be given no value in the marital estate.

18) That the parties did agree to many of the values of the marital estate, and left some for the Court to decide. The agreed upon values, splits and the Court determined splits shall be incorporated together, below.

19) That there was an initial agreement regarding many issues and then a later repudiation of a few of the issues after

---

1. The preliminary order merely states that visitation shall occur "According to Parenting Time." Appellant's App. at 37. We logically infer that this statement refers to the Indiana Parenting Time Guidelines. Husband confirms this inference. Appellant's Br. at 4.

2. Husband did not include this motion in his appellant's appendix.

husband determined that some numbers and items may not be correct.

20) That husband's attorney noted that he quickly looked at the agreed stipulation and signed it to narrow the issues and expedite the proceedings.

21) That the Court will allow husband's attorney to revisit those items that were initially agreed to and not caught by husband as being incorrect.

22) That as to the personal property, wife shall have all of the items currently in her possession (except those items listed in #23) and the following items not in her possession:

 a) Her jewelry

 b) Samantha's personal effects (See exhibit 2)

 c) Pressure Cooker

 d) Curtains and Linens from Danielle's room

 e) Roaster

 f) Pitcher/Bowl set

 g) Grill

 h) Christmas Decorative Dishes

 i) Wife's Cake Plate Collection

 j) DVD Player

 k) White shelving unit from Master Bedroom

 l) Iron and ironing board

 m) Freezer

. . . .

38) That husband had a checking account that the Court will find was valued at $2,417.00.

39) That husband shall be given said amount and it shall be placed in his column.

40) That during the pending preliminary order, husband took out substantial funds from the parties' line of credit in violation of the Court order not to transfer, encumber or sell any assets of the estate.

41) That it is believed that much of this money went to a new car for husband.

42) That as such, wife asks this Court to include an amount of $4,750.00 in husband's column for said expenditures.

43) That husband attempted to explain away the monies as those spent on the home and other bills, but the Court is not satisfied with the husband's argument.

44) That as such, the husband shall be given a figure of $4,750.00 in his column for the assets he used for his own purposes, in violation of the Court order.

. . . .

48) That there are no debts to the parties in this case.

49) That husband agreed on a 60–40 split in this case.

50) That the wife asks for a 90–10 [split] if the Court allowed husband to repudiate his first agreement in this case.

51) That the Court stated above that husband's attorney had a valid reason for re-opening select issues regarding amounts and the husband shall not be punished for that.

52) That the Court shall accept and find that a 61.6–38.4 percent split as appropriate in this case.

. . . .

71) That the Court made it abundantly clear to husband that he would be jailed if he did not ensure visitations occurred between wife and Cody.

72) That the Court finds substantial evidence that Cody missed four (4) visitations due to the actions or inactions of husband.

. . . .

102) That the parties shall pay for Samantha's higher education costs as they have been up to this point.

103) That due to husband[']s continuing inability to do what is best for his children in this case, and to take steps to try to avoid Court orders, the wife shall have both physical and legal custody of Samantha, Cody and Danielle.

. . . .

106) That for husband[']s contempt in failing to ensure that Cody made his visits as ordered by this Court, he shall serve four (4) days in the Morgan County Jail, starting the weekend of January 21–23, 2005 for 48 hours and again on February 4–6, 2005 for 48 hours.

. . . .

108) As stated above, the Court found husband in contempt and jailed him in this order, as husband was informed the Court would do.

. . . .

169) That the estate shall be divided as follows:

 a) Husband: $20,369.00
 b) Wife: $32,644.06

Appellant's App. at 46–52.

On January 14, 2005, Wife filed a motion to correct clerical errors and for more definite statement. On January 20, 2005, Husband filed a motion to reconsider and stay implementation of contempt sanctions. On January 21, 2005, the trial court granted Husband's motion. On January 24, 2005, the trial court granted in part and denied in part Wife's motion to correct clerical errors. On February 2, 2005, Wife filed a second motion to correct error. On February 3, 2005, Husband filed a motion to correct error, motion to correct clerical errors, and motion to clarify. On February 7, 2005, the trial court granted Wife's second motion to correct error. The trial court did not rule on Husband's motion to correct error, and therefore the motion was deemed denied on March 19, 2005, pursuant to Indiana Trial Rule 53.4(B). Husband appeals.[3]

### Discussion and Decision
#### *Standard of Review*

■ Initially, we note that Wife chose not to file an appellee's brief. When an appellee fails to file a brief, we apply a less stringent standard of review. *McKinney v. McKinney,* 820 N.E.2d 682, 685 (Ind.Ct. App.2005). We are under no obligation to undertake the burden of developing an argument for the appellee. *Id.* We may, therefore, reverse the trial court if the appellant establishes prima facie error. *Id.* "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.*

■ The trial court in this case issued findings of fact and conclusions thereon. Our standard of review in such cases is well settled:

In reviewing the judgment of the trial court, we must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. The findings and judgment will not be set aside unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when it is unsupported by the findings of fact. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. Moreover, we will not reweigh the evidence or assess witness credibility.

**3.** On April 11, 2005, the case was transferred from Morgan Circuit Court under cause number 55C01–0312–DR–1014 to Morgan Superior Court 3 under cause number 55D03–0504–DR–65.

*Daugherty v. Daugherty*, 816 N.E.2d 1180, 1183 (Ind.Ct.App.2004) (citations omitted).

### I. Value of Husband's Checking Account

Husband contends that the trial court abused its discretion in assigning a value of $2,417.00 to his checking account.

> In a dissolution action, the trial court has broad discretion in determining the value of property, and its valuation will only be disturbed for an abuse of that discretion. So long as there is sufficient evidence and reasonable inferences to support the valuation, an abuse of discretion does not occur. We will not weigh the evidence and will only consider the evidence in the light most favorable to the judgment.

*Breeden v. Breeden*, 678 N.E.2d 423, 425 (Ind.Ct.App.1997) (citations omitted).

All property owned by either spouse before the marriage, acquired by either spouse in his or her own right after the marriage and before the final separation of the parties, or acquired by the joint effort of the parties is included within the marital estate. Ind.Code § 31–15–7–4. "Final separation" is defined in pertinent part as the date of filing of the petition for dissolution of marriage. Ind.Code § 31–9–2–46. The trial court has discretion to set any date between the date of filing the dissolution petition and the date of the hearing as the date for marital property valuation. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996).

Specifically, Husband argues that inasmuch as the trial court valued his checking account as of December 9, 2003, that valuation was an abuse of discretion because it included a post-separation deposit. He correctly states that the parties *physically* separated on December 5, 2003, and that he made a $1,500.00 deposit into his checking account on December 9, 2003.

His argument appears to suggest that the trial court should have valued the checking account as of December 5, 2003. However, the marital estate is not closed until the date of final separation, which in this case is December 8, 2003, when Wife filed the dissolution petition. Ind.Code § 31–9–2–46. Husband concedes that he wrote the check to himself from the parties' line of credit on December 6, 2003, for $1,500.00 and deposited the check in the parties' First National Bank and Trust account. Appellant's Br. at 14. Inasmuch as Husband wrote this check to himself and had it in his possession before Wife filed the petition for dissolution, we find that it is of no moment that Husband waited until after Wife filed the petition to deposit the check. Under these circumstances, the trial court did not abuse its discretion in valuing Husband's checking account.

### II. Distribution of Personal Property

Husband asserts that the trial court abused its discretion in distributing personal property owned by non-parties. Specifically, he claims that the following items were not marital assets: the pitcher and bowl set; the console TV; the living room couch; the whole bedroom # 2; and the iron bed. *Id.* at 21. None of the items about which Husband complains, except the pitcher and bowl set, were included in the trial court's divorce decree. Appellant's App. at 47, 54. With regard to the pitcher and bowl set, Husband testified that it was his grandmother's and had been in his mother's living room ever since his grandmother died. *Id.* at 131–32. Husband asserts, incorrectly, that Wife provided no rebuttal testimony. In fact, Wife testified that the pitcher and bowl had been a gift from Husband's grandmother to their daughter, Samantha, and was at Husband's mother's home. *Id.* at 113. Wife was awarded custody of Saman-

tha, and therefore, she properly maintains some control over her child's property. *See Kemp v. Kemp,* 485 N.E.2d 663, 665 (Ind.Ct.App.1985) ("It is a matter of common sense, then, that in the process of determining which parent acquires or retains custody of a child, a court necessarily grants to that parent some degree of control over the child's property."). Husband's argument is an invitation to reweigh the evidence, which we must decline. We conclude that trial court did not abuse its discretion in awarding the pitcher and bowl set to Wife.

### III. Line of Credit Withdrawal

 Husband argues that the trial court abused its discretion in awarding him $4,750.00, the amount that he withdrew from the parties' line of credit to purchase a car. In resolving this issue we observe that "in a dissolution proceeding, the trial court is mandated, by statute and case law, to divide the assets and liabilities of the parties to the proceeding in which they have a vested personal interest. Of course, the trial court may not divide assets which do not exist just as it may not divide liabilities which do not exist." *In re Marriage of Lay,* 512 N.E.2d 1120, 1123–24 (Ind.Ct.App.1987).

Here, as previously stated, the marital estate was closed on December 8, 2003, when Wife filed the dissolution petition. Ind.Code §§ 31–15–7–4, 31–9–2–46. The

record reveals that Husband wrote himself a check from the line of credit and purchased the car on January 15, 2004. Appellant's App. at 101–02. Therefore, Husband's withdrawal from the line of credit occurred after the marital estate was closed.[4] The trial court found that during the "pending preliminary order" Husband withdrew funds from the line of credit in violation of the order. *Id.* at 48. The record reveals that this finding is clearly erroneous.

 The trial court issued its preliminary order on January 25, 2004, after Husband made the withdrawal from the line of credit and purchased the car. Husband apparently thinks that the trial court was referring to the temporary restraining order issued on January 22, 2004, which was also subsequent to his purchase of the car. Inasmuch as Husband's withdrawal from the parties' line of credit and purchase of his car occurred before both the preliminary order and the temporary restraining order, Husband's actions were not in violation of either order because neither was in existence. We therefore conclude that the trial court abused its discretion in including in the marital estate the $4,750.00 Husband withdrew from the line of credit to purchase a car. Therefore, we remand for a recalculation of the marital estate, and a reassessment of the appropriate division between the parties if necessary, consistent with this opinion.[5]

4. No corresponding liability exists because both parties agreed to file for Chapter 7 bankruptcy. Appellant's App. at 84.

5. Husband also argues that the trial court abused its discretion in finding that Husband agreed to a 60–40 split in Wife's favor. Specifically, he argues that his willingness to agree to the 60–40 split was based upon his belief that the line of credit withdrawal was not going to be an issue. In his motion to correct error, Husband requested that the court should either delete the $4,750.00 as an

asset in Husband's column and leave the 60–40 division or vacate the stipulation and set forth its reasons for deviating from a 50–50 split. Appellant's App. at 77. Because we have concluded that the trial court abused its discretion in including the line of credit withdrawal in the marital estate, Husband's objection to the 60–40 split has been removed, and therefore we need not address whether the trial court abused its discretion in finding that the parties stipulated to a 60–40 split in Wife's favor.

### IV. Minimum Grade Point Average

 Husband asserts that the trial court abused its discretion in failing to require that Samantha maintain a minimum grade point average as a condition precedent for his contribution toward her college education. Initially, we note that "[t]he trial court's decision concerning financial contributions to college endeavors will be affirmed unless the decision is clearly against the logic and effect of the facts and circumstances which were before it." *Gilbert v. Gilbert*, 777 N.E.2d 785, 792–93 (Ind.Ct.App.2002). "Although a parent is under absolutely no legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate." *Id.* at 793. Indiana Code Section 31–16–6–2(a) provides in relevant part, "The child support order or an educational support order may also include, where appropriate[,] amounts for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account the child's aptitude and ability."

Husband concedes that there are no Indiana cases holding that a trial court's failure to require a minimum grade point average as a condition for a parent's continued contribution toward the child's college education is reversible error. Husband recognizes that the Indiana cases dealing with this issue have been concerned with the enforcement of trial court orders that have required a minimum grade point average. He cites *Sebastian v. Sebastian*, 798 N.E.2d 224, 235 (Ind.Ct. App.2003), in which we held that the father was required to pay for any semester immediately following a semester where his son achieved the minimum grade point average set by the trial court. He argues that *Sebastian* and similar cases provide guidance and lend support for requiring trial courts to set a minimum grade point average. Appellant's Br. at 23.

He further asserts that *Cavazzi v. Cavazzi*, 597 N.E.2d 1289 (Ind.Ct.App.1992), when read in conjunction with *Sebastian* supports his position. In *Cavazzi*, the trial court had ordered the father to pay his daughter's college expenses even though no evidence had been presented on his daughter's aptitude or the father's ability to pay. *Id.* at 1293. In fact, the mother's petition for modification of child support had not even contained a request for college expenses. *Id.* In reversing the trial court's order, we stated, "[B]efore ordering a parent to pay a child's college expenses, the trial court must hold a hearing on the child's aptitude and ability and the parent's ability to pay." *Id.*

 We find both *Sebastian* and *Cavazzi* inapposite. Husband's argument boils down to a request that we hold, as a matter of law, that Indiana Code Section 31–16–6–2(a) requires trial courts to set a minimum grade point average as a condition for continued education support. We decline so to hold. The creation of such a requirement falls within the province of our legislature.[6] Accordingly, we conclude that the trial court did not abuse its discretion in failing to require a minimum grade point average as a condition precedent to Husband's continued contribution to Samantha's college expenses.

---

**6.** Indiana Child Support Guideline 6 states in pertinent part, "The court *should* require that a student maintain a certain minimum level of academic performance to remain eligible for parental assistance and should include such a provision in its order." (Emphasis added.) We encourage trial courts to set a minimum level of academic performance when appropriate. However, whether a minimum grade point average is appropriate and, if so, the precise level of that grade point average, should be determined on a case-by-case basis.

### *V. Contempt Order*

 Husband contends that the trial court's order that he serve four days in the Morgan County Jail for contempt of a child visitation order is illegal.

> [I]t is within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of the court's order. The main objective of a civil contempt matter is to coerce action for the benefit of the aggrieved party, not to punish the contemptor. Consequently, in a civil contempt proceeding, imprisonment should be for the purpose of coercing compliance with the order.

*Williamson v. Creamer*, 722 N.E.2d 863, 867 (Ind.Ct.App.2000) (quotation marks and citations omitted).

 Here, the following findings made by the trial court reveal that the incarceration was punitive: (1) the trial court "made it abundantly clear to husband that he would be jailed if he did not ensure visitations occurred between [W]ife and Cody"; (2) Cody missed four visitations due to the actions or inaction of Husband; (3) "for husband['s] contempt in failing to ensure Cody made his visits as ordered by this Court, he shall serve four (4) days in the Morgan County Jail." Appellant's App. at 50. While we acknowledge that any imprisonment has punitive and deterrent effects, imprisonment shall be viewed as remedial rather than punitive if the court conditions the contemnor's release upon the contemnor's willingness to comply with the order from which the contempt finding was based upon. *Thompson v. Thompson*, 811 N.E.2d 888, 906 (Ind.Ct.App.2004), *trans. denied.*

Here, the trial court did not condition Husband's release upon his willingness to comply with the visitation order. In fact, such a condition of release was impossible because the trial court awarded custody of the three children to Wife in the final divorce decree. Appellant's App. at 50. Thus, the visitation order that Husband violated was no longer in effect, and the incarceration could have no coercive effect on Husband or provide a benefit to Wife. *See Thompson*, 811 N.E.2d at 906 (holding that two-week jail sentence for contempt was illegal where trial court failed to include provision allowing defendant to purge himself of contempt and forgo jail sentence by complying with trial court's order). We conclude that trial court erred in ordering that Husband be incarcerated for contempt, and we vacate that portion of the divorce decree.

### *Conclusion*

In sum, the trial court did not abuse its discretion in valuing Husband's checking account. In addition, the trial court did not abuse its discretion in distributing personal property. However, the trial court did abuse its discretion in including Husband's withdrawal from the parties' line of credit in the marital estate. We remand so that the trial court may recalculate and redistribute the marital estate consistent with this opinion. With regard to Husband's contribution to college expenses, the trial court did not abuse its discretion in failing to require that daughter maintain a minimum grade point average. Finally, the trial court erred in ordering that Husband be incarcerated for contempt, and we vacate that portion of the final divorce decree.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and MAY, J., concur.