# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**PETER M. YARBRO**
**FRED R. HAINS**
**NICOLE B. MUIR-KIMMERLY**
Hains Law Firm, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**MARK J. PHILLIPOFF**
Jones Obenchain, LLP
South Bend, Indiana

**FILED**

Oct 22 2014, 9:52 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRACUENTA R. PANFIL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1404-DR-183 |
| | ) | |
| RALPH E. FELL, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Jenny Pitts Manier, Special Judge
Cause No. 71C01-0303-DR-189

**October 22, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Larracuenta R. Panfil ("Mother") appeals the trial court's February 7, 2014 order terminating the obligation of Ralph E. Fell ("Father") to pay post-secondary educational expenses for K.F. ("Daughter") and the court's denial of Mother's motion to correct errors. Mother raises two issues which we revise and restate as whether the court erred or abused its discretion in entering the February 7, 2014 order and denying her motion to correct errors. We affirm.

FACTS AND PROCEDURAL HISTORY

Mother and Father were married on June 3, 1989, and two children were born of the marriage, Daughter, born December 16, 1993, and M.F., born October 18, 1995. On March 9, 2004, the St. Joseph Circuit Court entered a decree of dissolution of the marriage, and the decree incorporated the terms of a settlement agreement entered by the parties. The settlement agreement provided, among other things, that Daughter "shall be responsible for payment of one-third (1/3) of her own college education expenses" and "that the remaining two-thirds (2/3) of [Daughter's] college education expenses should be paid by the Parties with each party equally contributing Fifty percent (50%) of those expenses." Appellant's Appendix at 21.

On March 1, 2011, Mother filed a petition to modify child support. On July 12, 2012, Father filed a Petition for Finding of Repudiation of Relationship, alleging Daughter wanted nothing to do with him and requesting the court to find Daughter had repudiated her relationship with him. After a hearing, the court entered an order on July 30, 2012, establishing Father's weekly child support obligation and net arrearage, finding there had not been a complete refusal by Daughter to engage in the parent-child relationship, and

denying Father's petition for a finding of repudiation. With respect to college expenses, the court's order provided:

> The parties shall share the expense of tuition, room and board, books and necessary fees as provided in Decree. Father's obligation to pay post-secondary educational expenses is dependent upon [Daughter] maintaining a grade point average of 2.1 and not being placed on probation or being subject to any disciplinary action for violation of school rules or policies.

Id. at 38.

On January 14, 2014, Father filed a Petition to Discontinue Paying for Daughter's Post-Secondary Educational Expenses, which referenced the court's July 30, 2012 order and alleged that Daughter "dropped one (1) three-hour course, Introduction to International Relations, and was caught cheating in a three-hour history course, Introduction to the Modern World" and that, "as a result of the cheating, she failed the course and received an overall grade point average of 1.93." Id. at 44.

On February 4, 2014, the court held a hearing on the petition, at which the parties appeared in person and Daughter participated by telephone. Father's counsel referred to the court's July 30, 2012 order and argued that Daughter "was caught cheating in a history class that she took. She committed -- apparently committed plagiarism. And she was disciplined by getting an F in that class, a class that she otherwise would have passed." Transcript at 6. Father's counsel also stated that Father "offered to have [Daughter] come and live with him for this semester, he'd help her find a job, he'd help her get on the right track . . . . She – she declined that." Id. Father's counsel requested the court to "enforce the [July 30, 2012] order." Id. at 6-7.

3

Mother's counsel argued that Daughter had "not been disciplined, she's not on probation [and] in fact is still a member in good standing" and that Daughter's overall GPA was 2.34. Id. at 7. Mother's counsel emphasized that Daughter "is in fact not on probation," that "the teacher did not turn this information in to [] Purdue University about the cheating," and that "[t]here's nothing . . . other than the F on her records." Id. at 8-9. Mother also presented documentary evidence of Daughter's transcript of grades at Purdue University, Purdue University's rules relating to academic probation, tuition information, and Father's income.

Daughter testified "this is my second semester of my sophomore year" and that her overall grade point average was 2.34. Id. at 11. When asked by Mother's counsel to describe what happened in her history course, Daughter testified:

> Throughout the course – it was an online class and every week in the class we had to submit a paper. And on those papers every week – like everyone in the class would submit them – you had to comment on everyone's paper five times. And I cheated and I plagiarized some of my comments.

Id. at 11-12. When asked "[h]ow many times [she] cheat[ed] in the course," Daughter stated "[t]hree times." Id. at 12. When Mother's counsel asked, "[p]rior to your plagiarizing the reviews of the other students what was you grade in that course," Daughter stated she had "an 84 percent." Id. The court asked "[w]hat lesson did you learn," and Daughter stated "[t]o not plagiarize or get lazy like that again." Id. at 13. She also testified that she dropped a different course, international politics, in the fall semester because she had "never been in any type of politics course and [she] felt like [she] was totally lost in the class" and "knew that would affect [her] GPA." Id. Additionally, Daughter testified

4

that Father "offered for [her] to stay with him the last week of winter break." Id. at 14. When Mother's counsel asked whether "he ever offer[ed] you to come down and live with him and stay at his house and kind of get yourself reacclimated or refocused," Daughter responded, "[n]o." Id. Daughter also stated that Father "said that if [she] didn't go [to Father's house] for the last week of school," he would not continue to support Daughter's college efforts. Id. Daughter testified that "over parents' weekend [Father] gave [her] $500 for books and other stuff." Id. at 15.

Father's counsel then questioned Daughter about the incident, and Daughter indicated she "ended up getting an F because of the plagiarism." Id. at 17. When Father's counsel asked Daughter, "[w]asn't it disciplined [sic] by Purdue to give you an F in the class," Daughter responded: "Yeah." Id. at 18.

Mother's counsel asked Daughter if "the instructor was the one that gave [Daughter] the F," and Daughter responded "[y]es it was under her discretion." Id. Daughter further indicated that she had not been contacted by the University's admission office or anyone else concerning the incident. The court asked Daughter several questions about the discussion she had with her instructor, and Daughter stated:

> I met with her. I had a meeting with her in her office and she -- we -- she explained the whole situation, like what she found, like me cheating and so on and so forth.
>
> And she said that she had the option to either fail me from the course or to admit me to the Dean of Students, which would then put me on academic probation and things like that.
>
> But she said that because of – I was doing well in the course and the plagiarism was minimal, that she was just going to fail me and give me a chance to retake it.

5

Id. at 19.

In response to questions posed by Father's counsel, Daughter indicated she knew that Father had attempted to contact her instructor to discuss the incident but was unable to do so because he needed Daughter's permission. Daughter testified that she did not give Father her permission to talk with her instructor. Daughter explained:

> I just – I felt like I've already moved on from the situation and I'm working towards getting the F off my transcript and replacing it with a better grade. And I felt that he was just going to use it against me in court to make me look bad.

Id. at 20. With respect to an offer he gave Daughter, Father testified:

> I wanted her to figure out what she wanted to do with her life because she has no idea what – she's changed majors two times now. She's doing horrible in school.
>
> This isn't the only semester she's done bad. The first semester she withdrew, she had a D. She had an incomplete in psychology because she didn't finish the requirements of the course. This is the second time she's had a horrible semester. And she's going down the wrong path.

Id. at 24. Father testified that Daughter "declined [his] offer." Id.

On February 7, 2014, the court entered an order which granted Father's petition to discontinue paying for Daughter's post-secondary educational expenses. The court found that Daughter's "cumulative grade point average of 2.34 is sufficient to permit her to remains [sic] in good academic standing with Purdue." Appellant's Appendix at 14. The court further found:

> [Daughter] received a failing grade in the Fall, 2013 semester, having been discovered to have plagiarized the work of fellow students. [Daughter] readily admitted at the hearing that plagiarism was a violation of Purdue's rules and policies and the "F" she received (when she appeared on track for

6

a better than passing grade) was a disciplinary action. This behavior is clearly the type she was put on notice as having the potential to relieve Father of an obligation to contribute to the cost of her college education.

Id. at 14-15.

On March 7, 2014, Mother filed a motion to correct errors, in which she argued that characterizing the response to Daughter's actions as a "disciplinary action" was incorrect, that, according to Purdue University's regulations, plagiarism is an example of academic dishonesty, that Daughter "never faced a case of alleged academic dishonesty," and that Daughter "was punitively graded." Id. at 48-49. Mother also sought clarification as to "when Father's requirement to contribute to [Daughter's] post-secondary educational expense ended." Id. at 53. Mother attached exhibits to her motion which included, among other documents, Purdue University's Regulations Governing Student Conduct, Disciplinary Proceedings, and Appeals, a Purdue Dean of Students document titled "Academic Integrity: A Guide for Students," a copy of Daughter's college transcript, and Daughter's Spring 2014 tuition bill. Id. at 105.

On March 20, 2014, the court held a hearing on Mother's motion to correct errors. Mother's counsel argued in part that the court had been unclear as to "whether the cessation of Father's contributions is just for the semester of spring 2014 or . . . the rest of [Daughter's] education." Transcript at 34. Mother's counsel further requested clarification as to whether "ceasing Father's contribution" would have "any sort of retroactive . . . implementation." Id. at 35. Mother's counsel also argued that "Father owes those monies for the spring semester that were due prior to the petition or prior to the order . . . ." Id.

7

On March 24, 2014, the court denied Mother's motion to correct errors. The court found:

> No error was committed in determining that the commission of this act by [Daughter], having been put on notice by the Court as to what was expected of her as a college student to secure Father's obligation to contribute financially to the cost of her education, warranted relieving Father of this duty.

Appellant's Appendix at 11. The court stated that it "affirms its decision and adds the following clarification: Father's obligation to contribute to [Daughter's] college educational expenses ends with the cost of the fall 2013 semester." Id. at 12.

## DISCUSSION

The issue is whether the trial court erred in entering its February 7, 2014 order terminating Father's post-secondary educational support obligation for Daughter and denying Mother's motion to correct errors. We generally review rulings on motions to correct error for an abuse of discretion. Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008), reh'g denied. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied.

"We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that child support modifications will not be set aside unless they are clearly erroneous.'" Lea v. Lea, 691 N.E.2d 1214, 1217 (Ind. 1998) (quoting Stultz v. Stultz, 659 N.E.2d 125, 128 (Ind. 1995)). "Findings are

8

clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

Mother contends that the court erred in ordering that Father was no longer obligated to pay for Daughter's educational expenses. Mother argues that the failing grade Daughter received in the course was not a disciplinary proceeding as defined in Purdue University's regulations or discipline as that term is commonly defined. Mother further claims that, when the court relieved Father from his obligation to pay for Daughter's educational expenses, the result was punitive, unduly harsh, and inconsistent with the purposes of the state's educational support provisions.

Father maintains that a punitive grade is a disciplinary action pursuant to Purdue's regulations and that Daughter was subject to an informal disciplinary action. He further argues that, contrary to Mother's claim, the trial court was not required to consider Purdue University's regulations when it first drafted the July 30, 2012 order. Father argues the trial court properly enforced its order and that courts have the authority to set minimal levels of acceptable behavior for college-age children receiving educational support. In her reply brief, Mother argues that the steps the instructor took in response to Daughter's

9

actions were neither formal nor informal discipline, and she notes that Daughter was given

the opportunity to retake the class.

The modification of a child support order is governed by Ind. Code § 31-16-8-1,

which provides:

a)      Provisions of an order with respect to child support or an order for
         maintenance (ordered under IC 31-16-7-1 or IC 31-1-11.5-9(c) before
         their repeal) may be modified or revoked.

b)      Except as provided in section 2 of this chapter, modification may be
         made only:

   1)      upon a showing of changed circumstances so substantial
            and continuing as to make the terms unreasonable; or

   2)      upon a showing that:

      (A)      a party has been ordered to pay an amount
                in child support that differs by more than
                twenty percent (20%) from the amount
                that would be ordered by applying the
                child support guidelines; and

      (B)      the order requested to be modified or
                revoked was issued at least twelve (12)
                months before the petition requesting
                modification was filed.

We first note that a child support order and an educational expense order are separate

and distinct. Knisely v. Forte, 875 N.E.2d 335, 340 (Ind. Ct. App. 2007) (citing Sutton v.

Sutton, 773 N.E.2d 289, 294 (Ind. Ct. App. 2002) (educational expenses are addressed

separately from child support)), reh'g denied. Ind. Code § 31-16-6-2 governs educational

support and provides that an educational support order may include amounts for the child's

education in institutions of higher learning. Ind. Code § 31-16-6-2(a) provides the support

order may include amounts at post-secondary education institutions, "taking into account: . . . the child's aptitude and ability . . . ."

"Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate." Gilbert v. Gilbert, 777 N.E.2d 785, 793 (Ind. Ct. App. 2002). Indiana Child Support Guideline 8, under subsection b, provides in part that "[i]t is discretionary with the court to award post-secondary educational expenses and in what amount" and that, "[i]n making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Subsection b also provides that "[t]he court should require that a student maintain a certain minimum level of academic performance to remain eligible for parental assistance and should include such a provision in its order." See also Deckard v. Deckard, 841 N.E.2d 194, 202 n.6 (Ind. Ct. App. 2006) ("We encourage trial courts to set a minimum level of academic performance when appropriate. However, whether a minimum grade point average is appropriate and, if so, the precise level of that grade point average, should be determined on a case-by-case basis.").

We further note that court orders for the payment of college expenses are modifiable because college expenses are in the nature of child support. Schacht v. Schacht, 892 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). Support orders, including orders to pay post-secondary expenses, may be modified even if the order is the result of an agreement between the

parties. <u>Walters v. Walters</u>, 901 N.E.2d 508, 511 (Ind. Ct. App. 2009) (citing <u>Meehan v. Meehan</u>, 425 N.E.2d 157, 160 (Ind. 1981)).

In this case, the record reveals that the dissolution decree incorporated an agreement of the parties which established in part that Father would pay for one-third of Daughter's expenses for her college education. The court later modified its order to condition Father's educational support obligation on Daughter "maintaining a grade point average of 2.1 and not being placed on probation or being subject to any disciplinary action for violation of school rules or policies." Appellant's Appendix at 38. Daughter copied three comments from other students in completing an assignment for an online course. The instructor for the course elected to give Daughter a failing grade for the course rather than report her to the Dean of Students. According to Daughter, the instructor elected this route because Daughter "was doing well in the course and the plagiarism was minimal . . . ." Transcript at 19. Clearly, the F she received was a disciplinary action for plagiarism.

The fact that the instructor and University did not pursue a formal action against Daughter is not dispositive. The court found that Daughter's behavior was "clearly the type she was put on notice as having the potential to relieve Father of an obligation to contribute to the cost of her college education." Appellant's Appendix at 14-15. In addition, the evidence includes an exhibit, submitted by Mother and titled "Academic Integrity: A Guide for Students," published by Purdue University's Dean of Students, that provided:

> **CONSEQUENCES FOR ACADEMIC DISHONESTY**
> Before any formal action is taken against a student who is suspected of committing academic dishonesty, the instructor is encouraged to meet with

12

the student to discuss the facts surrounding the suspicions. If the instructor concludes that the student is guilty, the matter may be resolved with the student through punitive grading. . . .

Id. at 106. Daughter was subject to punitive grading in this case. We will not disturb the court's determination that Daughter was subject to a disciplinary action for the purpose of, or as contemplated by, the court's July 30, 2012 order.

Based upon the record and Support Guideline 8, and keeping in mind that we place a strong emphasis on trial court discretion in determining child support obligations, we cannot say that the trial court erred or abused its discretion in terminating Father's educational support obligation related to Daughter.

CONCLUSION

For the foregoing reasons, we affirm the trial court's February 7, 2014 order and its denial of Mother's motion to correct errors.

Affirmed.

BRADFORD, J., concurs.

BARNES, J., concurs with separate opinion.

13

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRACUENTA R. PANFIL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1404-DR-183 |
| | ) | |
| RALPH E. FELL, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

**BARNES, Judge, concurring with separate opinion**

I write separately to concur with the outcome here, but I do so reluctantly and begrudgingly. The fact is K.F. was disciplined by her professor pursuant to Purdue's academic guidelines. However, this transgression, while not insignificant, does not, in my opinion, rise to the level of an offense that should serve to sever one's educational support obligation. Unfortunately for K.F., however, it does so because of the broad wording of the trial court's 2012 order and K.F.'s conduct, which she does not dispute. Although Father's apparent exuberance to get out from underneath his support obligation is troublesome, I must agree with the majority that the result is legally mandated, but practically repugnant.

14