FILED

Jun 26 2019, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana *ex rel.* Curtis T. Hill, Jr., Attorney General of Indiana, | June 26, 2019 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 18A-PL-2760 |
| v. | Appeal from the Owen Circuit Court |
| Larry Lawson, | The Honorable Erik C. Allen, Special Judge |
| *Appellee-Defendant,* | Trial Court Cause No. 60C02-1502-PL-54 |
| Angela M. Lawson aka Angie M. Lawson, | |
| *Appellee-Judgment-Defendant.* | |

**Najam, Judge.**

# Statement of the Case

In April 2017, the trial court entered a default judgment against Angela Lawson on the State of Indiana's complaint to recover public funds stolen by Angela during her tenure as Owen County Auditor. In its complaint, the State alleged that, when her theft was about to be discovered, Angela had fraudulently conveyed to her husband, Larry Lawson, her interest in certain real estate. The State named Larry as a defendant and sought to void the allegedly fraudulent transfer. Following a bench trial on the State's claim against Larry, the trial court found that the conveyance was fraudulent, but the court ordered that Larry was entitled to one-half of the proceeds from a sale of the real estate for his "equitable interest in the Property." On appeal, the State presents a single dispositive issue for our review, namely, whether the trial court misinterpreted Indiana's Uniform Fraudulent Transfer Act when it awarded the State only one-half of the proceeds from the sale of Larry's interest in the property.

We reverse and remand with instructions.

# Facts and Procedural History

In 1995, Larry and Don Germain bought seven acres of undeveloped real estate in Owen County for approximately $21,000 ("the property"). The two men made improvements to the property over the next few years, including excavating the land and installing a septic system, and they each spent approximately $7,500 on the improvements. Eventually, Larry and Don each built a home on the property.

[4]     In 2001, Larry married Angela. Also that year, because someone was threatening to "harass [Larry] legally about [the] property," he transferred his one-half interest in the property to Angela's daughter. Tr. at 48. But Larry and Angela continued to live in their house on the property. In 2004, Angela told Larry that, "in order to run for Auditor she had to own property in Owen County," and Angela's daughter transferred her interest in the property to Angela. *Id.* at 49. Angela became the Owen County Auditor in 2005.

[5]     At some point, the State Board of Accounts ("SBOA") investigated Angela on suspicion of misappropriation of public funds. Angela became aware of the SBOA's investigation and, on August 6, 2014, Angela quitclaimed her one-half interest in the property to Larry. A few days later, the Indiana State Police executed a search warrant for the Auditor's office, and Angela's employment was terminated. The SBOA investigation revealed that, between June 2009 and July 2014, Angela had spent approximately $346,000 on personal items using "numerous credit cards issued in the name of [Owen] County." State's Ex. 2 at 4.

[6]     The State filed a complaint against Angela to recover public funds, which it later amended to name both Angela and Larry as defendants. In relevant part, the State alleged that Angela had quitclaimed her interest in the property to Larry "with actual intent to hinder, delay, or defraud the State." Appellant's App. Vol. 2 at 52. In February 2017, by agreement of the parties, Germain bought Larry's interest in the property for $15,000, and that money was "deposited with the court." Appellee's Br. at 6. On April 17, the trial court

entered a default judgment against Angela and awarded the State $1,159,228.32, which included treble damages.

[7] Following a bench trial on the State's claim against Larry, the trial court entered thorough findings and conclusions. The trial court found that Angela had fraudulently conveyed the property to Larry. The court then concluded as follows: "Considering the totality of the circumstances and evidence, the Court determines it is equitable to award $7,500.00 of the proceeds [of the sale of the property] to [the State] and to release $7,500.00 to [Larry] . . . for his equitable interest in the Property." Appellant's App. Vol. 2 at 118. This appeal ensued.

## Discussion and Decision

[8] Initially, we note that Larry has not filed an appellee's brief.

> When an appellee fails to file a brief, we apply a less stringent standard of review. We are under no obligation to undertake the burden of developing an argument for the appellee. We may, therefore, reverse the trial court if the appellant establishes *prima facie* error. "*Prima facie*" is defined as "at first sight, on first appearance, or on the face of it."

*Deckard v. Deckard*, 841 N.E.2d 194, 199 (Ind. Ct. App. 2006) (citations omitted).

[9] The State contends that the trial court misinterpreted Indiana Code Section 32-18-2-18 (2018) of the Uniform Fraudulent Transfer Act ("the Act") when it ordered that Larry would receive $7,500 of the proceeds from the sale of the property "for his equitable interest in the property." Appellant's App. Vol. 2 at

118.  "Matters of statutory interpretation, which inherently present pure questions of law, are reviewed *de novo*."  *Paquette v. State*, 101 N.E.3d 234, 237 (Ind. 2018).  As this Court has recently stated, "[t]he primary purpose of statutory interpretation is to ascertain and give effect to the intent of the legislature.  The best evidence of legislative intent is the statutory language itself, and we strive to give the words in a statute their plan and ordinary meaning."  *21st Amendment, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 84 N.E.3d 691, 696 (Ind. Ct. App. 2017) (citations and quotations marks omitted).

[10]  Under the Act, a creditor may bring a claim to set aside a fraudulent conveyance made by a debtor.  Ind. Code § 32-18-2-17.  As relevant here, a conveyance is fraudulent and voidable if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud a creditor of the debtor.  I.C. § 32-18-2-14.  Indiana Code Section 32-18-2-18 provides in relevant part:

> (b) To the extent that a transfer is avoidable in an action by a creditor under section 17(a)(1)[1] of this chapter, the following rules apply:
>
> > (1) Except as otherwise provided in this chapter, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or

---

[1]  That provision states that, in an action for relief against a transfer under the Act, a creditor, subject to the limitations in Section 18 of the Act, may obtain avoidance of the transfer to the extent necessary to satisfy the creditor's claim.  I.C. § 32-18-2-17(a)(1).

the amount necessary to satisfy the creditor's claim, whichever is less. . . .

\* \* \*

(c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, *subject to adjustment as the equities may require*.

(Emphasis added).

[11] The State points out that, since the Act was enacted in 1994, "neither this Court nor the Indiana Supreme Court ha[s] interpreted the meaning of 'subject to adjustments as [the] equities may require.'" Appellant's Br. at 16. The State maintains that the trial court

misinterpreted "subject to adjustment as the equities may require" to mean that it could grant [Larry] half of the value of the Property for his "equitable interest" despite not finding that granting the State the full value of the Property would be an inequitable windfall. This approach contravenes the plain language of the statute and the intent of the legislature, which is that the creditor should obtain the *full value* of the property at the time of the transfer. "Subject to adjustment as the equities may require" is only to prevent the creditor or the transferee from gaining a windfall, i.e., more than the value of the property at the time of the transfer.

*Id.* at 14 (emphasis original).

[12] The corresponding section of the federal Uniform Fraudulent Transfer Act ("UFTA"), upon which the Indiana Legislature based Indiana Code Section 32-

18-2-18(c), is Section 8(c). The drafters of the 1984 version of the UFTA set forth the following Comment to Section 8(c):

> Subsection (c) is new. The measure of the recovery of a defrauded creditor against a fraudulent transferee is usually *limited to the value of the asset transferred at the time of the transfer.* The premise of § 8(c) is that changes in value of the asset transferred that occur after the transfer should ordinarily not affect the amount of the creditor's recovery. Circumstances may require a departure from that measure of the recovery, however, as the cases decided under the Uniform Fraudulent Conveyance Act and other laws derived from the Statute of 13 Elizabeth illustrate. Thus, *if the value of the asset at the time of levy and sale to enforce the judgment of the creditor has been enhanced by improvements of the asset transferred or discharge of liens on the property, a good faith transferee should be reimbursed for the outlay for such a purpose to the extent the sale proceeds were increased thereby.* . . .

Unif. Fraudulent Transfer Act § 8 cmt. (1984) (emphases added, citations omitted).

[13] Our Supreme Court has held that the comments to a uniform act are indicative of our Legislature's intent in enacting a statute based on the uniform act. *Basileh v. Alghusain*, 912 N.E.2d 814, 821 (Ind. 2009). Given that the 1984 version of Section 8(c) of the UFTA and Indiana Code Section 32-18-2-18(c) are identical, we consider the language of the Comment to be a strong indicator of the legislative intent underlying the statute. Accordingly, we must agree with the State that, under Indiana Code Section 32-18-2-18, a defrauded creditor is entitled to the full value of the fraudulently transferred property at the time of the transfer, and an "equitable adjustment is permitted only when an

inequitable windfall would result by granting the creditor the full value of the property." Appellant's Br. at 19.

[14] Here, Larry testified at the factfinding hearing that he had spent thousands of dollars on improvements to the property after he had purchased it in 1995. But those improvements were made long before the fraudulent transfer in August 2014, and he himself had transferred the property to Angela's daughter after he had made those improvements and well before Angela's daughter had transferred the property to Angela. The only evidence of improvements made to the property *after* Angela's fraudulent transfer back to Larry was the following testimony by Larry on redirect examination:

> Q: Have you done any improvements on the property since the transfer back to you?
>
> A: I do gardening every year, I'm in the process of doing landscaping, gardening now, I'm always doing repair and maintenance on the buildings.
>
> Q: Any additional building?
>
> A: No.

Tr. at 62.

[15] Again, "[t]he measure of the recovery of a defrauded creditor against a fraudulent transferee is usually limited to the value of the asset transferred at the

time of the transfer."[2] Unif. Fraudulent Transfer Act § 8 cmt. The only exception that might have been relevant here is that "a good faith transferee should be reimbursed for the outlay" for improvements made to fraudulently conveyed property after the transfer "to the extent the sale proceeds were increased thereby." *Id.* Because there is no evidence that Larry's gardening, landscaping, repair work, or maintenance done after the fraudulent transfer increased the value of the property or the sale proceeds, we conclude that the equities did not require that Larry be reimbursed. We therefore hold that the State is entitled to recover the entire $15,000 from the sale of Larry's one-half interest in the property. Thus, we reverse and remand with instructions for the trial court to enter judgment in favor of the State in the amount of $15,000.

Reversed and remanded with instructions.

Baker, J., and Robb, J., concur.

---

[2] The evidence at trial was undisputed, and the trial court found, that the fair market value of Larry's one-half interest in the property subject to the State's claim was $15,000 at the time of the fraudulent transfer.