## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2019, 6:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Adoption of K.H.; <br><br> T.H., <br> *Appellant,* <br><br> v. <br><br> J.W., <br> *Appellee.* | December 23, 2019 <br><br> Court of Appeals Case No. 19A-AD-1637 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Brett J. Niemeier, Judge <br><br> The Honorable Renee A. Ferguson, Magistrate <br><br> Trial Court Cause No. 82D04-1901-AD-6 |

**Najam, Judge.**

## Statement of the Case

[1]  T.H. ("Father") appeals the trial court's grant of J.W.'s ("Stepfather") petition for adoption of Father's minor child K.H. ("Child").  Father presents a single

issue for our review, namely, whether Stepfather presented sufficient evidence to support the trial court's grant of the adoption petition without Father's consent. We affirm.

## Facts and Procedural History

Father and S.W. ("Mother") never married, and they have one child together, Child, who was born on March 6, 2012. After Father's paternity was established, a court awarded Mother custody of Child, with Father to exercise parenting time at Mother's discretion. The court also ordered Father to pay child support to Mother. Father's parenting time with Child was sporadic, and, because he was incarcerated multiple times over the years, since 2013, Father has only seen Child approximately ten times. The last time Father saw Child was in November 2017.

Sometime in early 2017, Mother had begun dating Stepfather. In January 2019, Stepfather filed his petition for adoption of Child. And in February 2019, Mother and Stepfather were married. Father timely filed his objection to the adoption petition. Following a hearing , the trial court concluded that Father's consent to the adoption was not required. In particular, the court found and concluded in relevant part as follows:

> 10. [Father] did not communicate with [Child] for a period exceeding one year that began on or about the end of November 2017 through the date of the filing of the adoption petition [in] January 2019.

> * * *

12. [Father] has not significantly communicated with [Child] for several years because he had only seen [Child] about 10 times since June 2013.

13. [Father] testified that he saw [Child] at his mother['s] home on Christmas 2018; however, [Father's] mother testified that [Father] did not see [Child] at her home on Christmas 2018. The court finds that [Father] did not see [Child] on Christmas 2018.

14. [Father] does not have a relationship with his daughter and is not bonded to [her].

15. [Father] due to his own unlawful actions and choices voluntarily removed himself from [Child's] life.

16. [Father] was in and out of jail from late 2015 through the date of this hearing and was incarcerated the day of the hearing on his objection [sic].

* * *

22. One time when [Father] was on either probation or parole he was told by [Mother] that if he wanted to see [Child], she would agree to parenting time at the Parenting Time Center[,] to which he replied, "go f*** yourself."

23. [Father] did not send a letter, card or gift to [Child] in at least several years.

24. [Father's] testimony that he contacted the Mother hundreds of times to ask to see [Child], but was always denied by the Mother is not credible testimony.

25. [The CCS of the paternity matter] states that parenting time is at Mother's discretion and this Court finds that the parenting time was at Mother's discretion due to [Father's] violence toward the Mother.

26. [Father's] written objection to the adoption stated that his family did not get to see [Child] due to threats from the Mother.

27. [Father's mother] testified that she does see and have a relationship with [Child] and that she had never been threatened by [Child's] mother.

28. [Father] did not provide any support for [Child] in excess of one year. Petitioner's Exhibit #9.

* * *

30. While incarcerated at the IDOC [Father] has worked and received a wage.

31. While on work release [Father] worked at least two different jobs, one 40 hours a week and another at 60 hours a week.

32. When [Father] was on work release he made no effort to provide any support for [Child].

33. Petitioner's Exhibit # 9 shows one involuntary payment from 11/11/2017 through March 3, 2019.

34. [Father's] testimony that he was told by Volunteers of America that he was to put all his money in savings for when he is out is not a valid legal reason to provide zero support for [Child].

35. [Father's] pattern of conduct of violating probation and parole thereby extending his incarceration were voluntary actions which prevented him from seeing his daughter, [Child,] and from complying with his duty to provide support for [Child].

36. [Father] could have still communicated with [Child] through letters, cards, and gifts.

\* \* \*

CONCLUSIONS

1.  The Petitioner alleges that the biological father's consent is not required pursuant to [Indiana Code Section ] 31-19-9-8.

\* \* \*

4.  Pursuant to [I.C. §] 31-19-9-8(a)(1) this court finds that [Stepfather] has met his burden by clear and convincing evidence that [Father's] consent is not required pursuant to [Father's] failure to communicate significantly for a period of more than one year from Thanksgiving 2017 through the date of the consent hearing on May 10, 2019 when he [was] able to do so.

5.  [Father] was on legal probation and parole numerous times in 2016, 2017 and 2018 and if he abided by the rules of his probation or parole he would have been able to see [Child], but due to his own choices of violating probation and parole ended up being on the run from the law.

6.  Pursuant to [I.C. §] 31-19-9-8(a)(2) this court finds that [Stepfather] has met his burden by clear and convincing evidence that [Father's] consent is not required pursuant to [Father's] failure to pay child support for a year from November 11, 2017 through March 3, 2019 when he was able to provide some support.  Petitioner's Exhibit #9.

\* \* \*

RULING

For the reasons stated above, the Court finds that the Father's Consent to [Stepfather's] action to adopt [Child] IS NOT required pursuant to [I.C. §] 31-19-9-8(a)(1 and 2).

Appellant's App. Vol. 2 at 16-20. Accordingly, on June 13, the trial court issued an adoption decree granting Stepfather's petition. This appeal ensued.

## Discussion and Decision

Father contends that the trial court erred when it concluded that his consent to the adoption was not required. As our Supreme Court has stated:

> In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *In re Adoption of O.R.*, 16 N.E.3d 965, 972-73 (Ind. 2014).

> The trial court's findings and judgment will be set aside only if they are clearly erroneous. *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* We will not reweigh evidence or assess the credibility of witnesses. *In re Adoption of O.R.*, 16 N.E.3d at 973. Rather, we examine the evidence in the light most favorable to the trial court's decision. *Id.*

*E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018)

Initially, we note that Stepfather has not filed an appellee's brief.

> When an appellee fails to file a brief, we apply a less stringent standard of review. We are under no obligation to undertake the

burden of developing an argument for the appellee. We may, therefore, reverse the trial court if the appellant establishes prima facie error. "Prima facie" is defined as "at first sight, on first appearance, or on the face of it."

*Deckard v. Deckard*, 841 N.E.2d 194, 199 (Ind. Ct. App. 2006) (citations omitted).

[6] Generally, a trial court may grant a petition for adoption only if both the mother and father of the child consent. Ind. Code § 31-19-9-1 (2019). However, Indiana Code Section 31-19-9-8(a) provides in relevant part that consent to an adoption is not required from:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> > (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> >
> > (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Because the provisions of the statute are written in the disjunctive, they each provide an independent ground for dispensing with parental consent. *J.H. v. J.L. (In re Adoption of M.L.)*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012).

[7] Here, the trial court concluded that Father, for a period of at least one year, both failed without justifiable cause to communicate significantly with Child when able to do so and knowingly failed to provide for the care and support of

Child when able to do so as required by law or judicial decree. Father contends that Stepfather presented insufficient evidence to prove either statutory element. Because the statute is written in the disjunctive, we need only address whether the trial court erred when it concluded that Father, for a period of at least one year, failed without justifiable cause to communicate significantly with Child when able to do so.

[8] Our Supreme Court has stated that "[a] determination on the significance of the communication is not one that can be mathematically calculated to precision." *J.W. v. D.F. (In re Adoption of E.B.F.)*, 93 N.E.3d 759, 763 (Ind. 2018). The Court explained that the "significance of the communication cannot be measured in terms of units per visit. Even multiple and relatively consistent contacts may not be found significant in context. But a single significant communication within one year is sufficient to preserve a non-custodial parent's right to consent to the adoption." *Id.* (citations omitted).

[9] Here, at the hearing on May 10, 2019, Stepfather presented evidence that Father had not had any contact with Child since Thanksgiving 2017. Father disputed that evidence and testified that he had seen Child at Father's mother's house on Christmas 2018. But both Mother and Father's mother unequivocally testified that Father did not see Child that day. Father testified further that he had made multiple attempts to contact Child after Thanksgiving 2017, but he was thwarted by Mother. The trial court found that Father's testimony was not credible. And, as the court found, the evidence is undisputed that Father "has not sen[t] a letter, card or gift to [Child] in at least several years." Appellant's

App. Vol. 2 at 17. Father's contentions on this issue amount to a request for us to reweigh the evidence and witness testimony, which we cannot do. Father has not demonstrated that the trial court's conclusion that he failed to communicate significantly with Child for at least one year was clearly erroneous.[1] Accordingly, the trial court did not err when it concluded that Father's consent to Stepfather's adoption of Child was not required.

[10] Affirmed.

Vaidik, C.J., and Tavitas, J., concur.

---

[1] The trial court cited Indiana Code Section 31-19-9-8(a)(1) as the subsection applicable to this conclusion. That is a typo. The correct subsection is Indiana Code Section 31-19-9-8(a)(2)(A).